UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| THE MONTICELLO BANKING COMPANY, *et al.*, | CIVIL ACTION NO. 6:23-cv-00148-KKC |
| **Plaintiffs,** | |
| **v.** | **OPINION & ORDER** |
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the plaintiffs' motion for a preliminary injunction. (DE 16). Through their motion, plaintiffs seek to enjoin the defendants from implementing and enforcing the Small Business Lending Rule promulgated by the defendant, the Consumer Financial Protection Bureau (the "CFPB"). For the following reasons, plaintiffs' motion will be **GRANTED**.

## I. Background

Plaintiffs are seven Kentucky state-chartered banks, one national bank operating in Kentucky, and the Kentucky Bankers Association ("KBA"). The KBA is a trade association with approximately 150 national, state, and savings banks as members.

Congress established the CFPB in the Consumer Financial Protection Act of 2010 ("CFPA"). 12 U.S.C. § 5491(a). The CFPA generally tasks the CFPB with implementing and enforcing federal consumer financial law, including the Equal Credit Opportunity Act. *Id.* The CFPB is led by a single Director appointed by the President. *Id.* at § 5491(b). To fund the CFPB, Congress authorized the CFPB to draw from the combined earnings of the Federal

1

Reserve System "the amount determined by the Director to be reasonably necessary to carry out the authorities of the Bureau under Federal consumer financial law." 12 U.S.C. § 5497(a)(1). In each fiscal year, the CFPB cannot draw an amount exceeding 12% of the Federal Reserve's total operating expenses. 12 U.S.C. § 5497(a)(2)(A).

To expand data on small business lending, Congress amended the Equal Credit Opportunity Act through Section 1071 of the CFPA. *See generally* 15 U.S.C. 1691c-2. The express purpose of the Section is "to identify business and community development needs and opportunities of women-owned, minority-owned, and small businesses" and "to facilitate enforcement of fair lending laws." *Id*. Section 1071 requires financial institutions to gather 13 data points about their small business lending, including the amount applied for, the action taken on the application, the business's annual revenue, and the race, sex, and ethnicity of the principal business owners. *Id*. It further requires that financial institutions collect "any additional data that the Bureau determines would aid in fulfilling the purposes of this section." *Id*. The Section requires the Bureau to "prescribe such rules and issue such guidance as may be necessary to carry out, enforce, and compile data pursuant to" Section 1071. *Id*.

Pursuant to the authority to gather additional data, the Bureau issued the Small Business Lending Rule ("the Rule") on March 30, 2023. *See* 12 C.F.R. § 1074.1(a). The Rule sets forth additional data points to be collected by financial institutions in their small business lending practices. 88 Fed. Reg. 35150. These include: how the application was submitted, pricing information for credit transactions that are originated or approved but not accepted, and reasons for denial when applicable. *Id*.

The Rule has an effective date of August 29, 2023. *Id*. at 35533. The CFPB does not require covered institutions' compliance, however, until October 1, 2024, April 1, 2025, or

January 1, 2026, depending on the number of credit transactions originated for small businesses in the last two years. *Id.*

Plaintiffs filed suit in this Court, claiming that the CFPB's funding structure violates the U.S. Constitution's separation of powers. (DE 1.) They argue that because the Bureau issued the Final Rule with funds derived from unconstitutional sources, the Rule itself violates the constitution. Plaintiffs then moved for preliminary injunction to enjoin defendants from implementing and enforcing the Rule. (DE 15.)

## II. Discussion

A district court gauges a request for a preliminary injunction based on four factors: (1) the plaintiff's likelihood of success on the merits; (2) irreparable harm to the plaintiff absent injunctive relief; (3) substantial harm to others resulting from an injunction; and (4) the broader public interest. *Michigan State AFL-CIO v. Schuette*, 847 F.3d 800, 803 (6th Cir. 2017).

### a. Likelihood of success on the merits

First, the Court must consider whether plaintiffs are likely to prevail on their claim that the CFPB's funding structure is unconstitutional. The Appropriations Clause of the U.S. Constitution provides that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by law." U.S. Const. art. I, § 9, cl. 7.  Courts have gone both ways on whether the CFPB's funding comports with the Appropriations Clause.

The Fifth Circuit held that the CFPB's funding mechanism is unconstitutional because it contravenes the Constitution's separation of powers. *Cmty. Fin. Servs. Ass'n. of Am., Ltd. v. Consumer Fin. Prot. Bureau* ("*CFSA*"), 51 F.4th 616, 642 (5th Cir. 2022), *cert. granted*, 143 S.Ct. 978, 215 L. Ed. 2d. 104 (2023). The court found that the CFPB's funding is double-insulated from Congress's appropriations power because it "receives funding directly from the Federal Reserve, which is itself outside the appropriations process." *Id.* at 638. This

structure, according to the Fifth Circuit, runs "afoul of the separation of powers embodied in the Appropriations Clause." *Id* at 640.

The Second Circuit has held that the CFPB's funding structure is constitutional under the Appropriations Clause. *CFPB v. Law Offices of Crystal Moroney*, 63 F.4th 174, 181-83 (2d Cir. 2023). The court explicitly declined to follow the Fifth Circuit in *CFSA* and found no support for its conclusion or reasoning in either Supreme Court precedent, the Constitution's text, or the history of the Appropriations Clause. *Id.*

The Supreme Court has granted certiorari over the issue and will hear oral arguments on October 3, 2023. Given this circuit split, the likelihood of success on the merits is uncertain as the Supreme Court could rule either way. Under these unique circumstances, this factor does not tip the scale in either direction.

### b. Irreparable harm

The next factor for the Court to consider in determining whether injunctive relief is appropriate is the potential for irreparable harm to the plaintiffs if the injunction is not issued.

The plaintiffs raise unrecoverable compliance costs as irreparable harm. (DE 15 at 14-15.) Defendants respond that plaintiffs have not provided specific enough evidence to establish that they will be imminently harmed without preliminary relief. (DE 17 at 16.) Plaintiff bank presidents and the KBA have submitted declarations asserting that they have already begun incurring expenses to comply with the Small Business Lending Rule. (DE 15, Ex. 7-15.) They cite training programs, seminar fees, staff time, and new software as the types of costs necessary to incur in preparing for implementation of the Rule. *Id.*

These compliance costs are likely unrecoverable, resulting in irreparable harm to plaintiffs. Compliance costs incurred in preparation of a new government regulation are appropriately considered in assessing whether irreparable harm exists. *See Kentucky v.*

4

*Biden*, 57 F.4th 545, 556 (6th Cir. 2023) (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs.")). The federal government's sovereign immunity typically makes monetary losses like these unrecoverable. *Id*. Plaintiffs are already incurring expenses in preparation for enforcement of the Rule and will not be able to recover upon a Supreme Court ruling that the CFPB's funding structure is unconstitutional. Accordingly, this factor weighs in favor of granting the preliminary injunction.

### c. Remaining Factors

The two remaining preliminary injunction factors – substantial harm to others if the preliminary injunction is granted and public interest in the matter – merge when the government is the defendant. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Given that the Rule does not go into effect until October 1, 2024, and the Supreme Court will have issued its decision on the issue well before then, these factors carry little weight. The CFPB would not be able to enforce the Rule in the absence of a preliminary injunction since compliance is not yet required. Similarly, any benefit that the public would receive from enforcement of the Rule will not be realized until October 2024. Since the Supreme Court's decision will be issued by June 2024 at the latest, the CFPB will suffer no harm and the public will not lose any benefit by the issuance of the preliminary injunction.

### III. Conclusion

Before the Rule becomes enforceable, a decision on the merits will be issued by the highest Court in the land. A preliminary injunction will create no harm to the CFPB nor the public since the Rule would not otherwise be enforceable in the interim. Meanwhile, plaintiff banks are incurring expenses that will be unrecoverable and needless if the Supreme Court rules that the CFPB's funding structure is unconstitutional. Under these unique circumstances, in

5

the interest of preserving the status quo until the Supreme Court has made its decision, the plaintiffs' motion for a preliminary injunction will be **GRANTED.** (DE 15.)

For these reasons, it is hereby **ORDERED** that:

(1) Plaintiffs' motion for injunctive relief is **GRANTED** (DE 15);

(2) The Consumer Financial Protection Bureau is **ENJOINED** from enforcing the Small Business Lending Rule until the Supreme Court issues an opinion ruling that the funding structure of the CFPB is constitutional; and

(3) The Court will not require security due to the lack of evidence that the Consumer Financial Protection Bureau will incur any monetary costs or damages because of the preliminary injunction.

Dated September 14, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY